933 So.2d 770 (2006)
Betty McGEE, et al.
v.
A C AND S, INC., et al.
No. 2005-CC-1036.
Supreme Court of Louisiana.
July 10, 2006.
*772 Roussel & Roussel, Gerolyn P. Roussel, Perry J. Roussel, Jr., Angelique R. Duhon, LaPlace, for Applicant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, William L. Schuette, Jr., Leon Gary, Jr., James C. Percy, Michael W. Crosby, New Orleans, Olivia L. Smith, Denver, CO.; Bernard, Cassisa, Elliott & Davis, Stephen N. Elliott, Ann M. Sico, Metairie; Simon, Peragine, Smith & Redfearn, Susan B. Kohn, Douglas R. Kinler, New Orleans; Montgomery, Barnett, Brown, Read, Hammond & Mintz, Lawrence G. Pugh, III, New Orleans; Lynn Luker & Associates, Lynn M. Luker, New Orleans, Francine M. Giugno, for Respondent.
Joy Goldberg Braun, New Orleans, for Amicus Curiae, Product Liability Advisory Council, Inc. (PLAC).
Phil S. Goldberg, Mark A. Behrens, Washington, D.C., Kaye N. Courington, New Orleans, and Victor E. Schwartz, for Amici Curiae, Coalition for Litigation Justice, Inc., Chamber of Commerce of the United States, American Chemistry Council, American Insurance Association, and Property Casualty Insurers Association of America.
Patricia Cowen Penton, Richard Marshall Perles, Gary Allen Lee and Anita Ann Cates, New Orleans, for Amicus Curiae, Pete Territo.
David Mark Bienvenu, Jr., Baton Rouge, and William Shelby McKenzie, for Amici Curiae, National Association of Manufacturers, Louisiana Chemical Association, National Petrochemical & Refiners Association, Louisiana Independent Oil & Gas Association, Alabama Great Southern Railroad Company, Caterpillar, Inc., Conoco Phillips, Dow Chemical Company, Farmers Insurance Exchange, Georgia Pacific Corporation and Union Carbide Corporation.
Maureen Noonan Harbourt and Gary A. Bezet, Baton Rouge, for Amici Curiae, Louisiana Chemical Association, Exxon Mobil Corporation and Shell Oil Company.
Jason Taylor Little, Christopher T. Grace, III, Edwin A. Ellinghausen, III, Brian Carl Bossier, and Tara Nunez Smith, Mandeville, for Amicus Curiae Northrop Grumman Ship Systems Inc.
Joseph Henry Hart, IV, New Orleans, Ryan C. Wallis, and Lawrence Emerson Abbott, New Orleans, for Amicus Curiae, E.I. DuPont De Nemours & Co.
R. Dean Church, Jr., New Orleans, for Amicus Curiae, O-I f/k/a Owens Illinois, Inc.
James L. Ellis, Baton Rouge, for Ascension Chamber of Commerce, Bqaton Rouge Area Chamber, et al., and Ascension Economic Development Corporation.
Walter R. House, Jr., for Louisiana Department of Economic Development.
KIMBALL, Justice.
The issue presented in this case is whether loss of enjoyment of life is recoverable as a separate element of general damages that may be included as a separate item on a jury verdict form. For the reasons that follow, we hold that loss of enjoyment of life is recoverable as a separate element of general damages that may be included as a separate item on a jury verdict form and find that the court of *773 appeal erred in holding that a separate award for loss of enjoyment of life is erroneous as a matter of law. Therefore, we reverse the court of appeal's ruling granting the motion in limine and reinstate the district court's ruling denying the motion in limine.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, the widow and children of James Edward McGee, filed the instant wrongful death and survival actions against many defendants, including James Edward McGee's former employers and manufacturers of asbestos-containing products used during his employment (collectively "defendants"), seeking to recover damages for injuries sustained as a result of James Edward McGee's exposure to asbestos, from which he died on January 28, 2000.
In their petition, plaintiffs sought damages for, among other things, James Edward McGee's loss of enjoyment of life. Thereafter, defendants filed a motion in limine seeking to preclude plaintiffs from asserting a claim for loss of enjoyment of life. At the hearing on the motion, counsel for plaintiffs stated that plaintiffs were entitled to put on evidence and to have the jury give them an award for loss of enjoyment of life. Defense counsel stated that loss of enjoyment of life was a part of the general damage award and was not its own separate category of damages, but counsel for plaintiffs rebutted that loss of enjoyment of life was a separate item of damages. The district court remarked that it had allowed a separate category for loss of enjoyment of life in previous cases and denied defendants' motion in limine.
Defendants applied for supervisory writs, which the Fourth Circuit Court of Appeal granted. In reviewing the district court's ruling, the court of appeal stated that a separate award for loss of enjoyment of life was erroneous as a matter of law and stated that expert testimony concerning loss of enjoyment of life was inadmissible, citing its decision in Mistich v. Volkswagen of Germany, Inc., 94-0226, p. 5 (La App. 4 Cir. 6/25/97), 698 So.2d 47, 51. Accordingly, the court of appeal reversed the district court and granted defendants' motion in limine to prohibit plaintiffs from asserting a claim for loss of enjoyment of life. From that decision, plaintiffs applied for supervisory writs to this court, stating that the court of appeal erred in reversing the district court and holding that a separate award for loss of enjoyment of life is erroneous as a matter of law. We granted plaintiffs' writ application to determine whether loss of enjoyment of life is recoverable as a separate element of general damages that may be reflected as a line item on a jury verdict form.

DISCUSSION
Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed. See Day v. Ouachita Parish Sch. Bd., 35,831, p. 8 (La.App. 2 Cir. 8/8/02), 823 So.2d 1039, 1044.
In Louisiana, delictual actions are governed by La. C.C. art. 2315, which states that "[e]very act of man that causes damage to another obliges him by whose fault it happened to repair it." Thus, under La. C.C. art. 2315, a tortfeasor must compensate a tort victim for all of the damages occasioned by his act. The term "damages" refers to "pecuniary compensation, recompense, or satisfaction for an injury sustained." Fogle v. Feazel, 201 La. 899, 909, 10 So.2d 695, 698 (1942). In the delictual context, La. C.C. art. 2315 authorizes *774 compensatory damages. Compensatory damages encompass those damages "designed to place the plaintiff in the position in which he would have been if the tort had not been committed." Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996) (footnotes omitted).
Compensatory damages are further divided into the broad categories of special damages and general damages. Special damages are those which have a "ready market value," such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages, while general damages are inherently speculative and cannot be calculated with mathematical certainty. Id. § 7-2 (footnotes omitted).
This court has previously defined general damages as "those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money." Duncan v. Kansas City S. R.R., 00-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682; Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506, 507 (La.1978); Anderson v. Welding Testing Lab., Inc., 304 So.2d 351, 352 (La.1974).
Loss of enjoyment of life falls within the definition of general damages because it involves the quality of a person's life, which is inherently speculative and cannot be measured definitively in terms of money. "The loss of gratification of intellectual or physical enjoyment" included in the definition of general damages directly results from a person's "inability to participate in the activities or pleasures of life that a person formerly enjoyed" as set forth in the definition of loss of enjoyment of life. Similarly, "the loss of life or life-style" included in the definition of general damages is substantially similar to the "detrimental alteration of a person's life or lifestyle" as included in the definition of loss of enjoyment of life. Thus, loss of enjoyment of life is clearly encompassed within "the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style" component of this court's existing definition of general damages.
La. C.C. art. 2315 authorizes a tort victim to be compensated for the damage sustained as a result of the delict, including those for loss of enjoyment of life, if proven. Moreover, this court has clearly defined general damages to include loss of enjoyment of life. Consequently, loss of enjoyment of life is a compensable component of general damages under both La. C.C. art. 2315 and this court's existing definition of general damages. Therefore, the only remaining issue is whether loss of enjoyment of life may be separated from other elements of general damages, such as mental and physical pain and suffering, and whether that separation may be reflected by having a line for loss of enjoyment of life on a jury verdict form. See Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 1 (La.10/30/00), 772 So.2d 94, 106-107 (Victory, J., assigning additional reasons) (stating "this Court has never squarely addressed the issue of awarding hedonic damages for loss of enjoyment of life as a separate element of damages").
As established above, loss of enjoyment of life is a component of general damages and therefore loss of enjoyment of life is not separate and distinct from general damages. Nevertheless, general damages in Louisiana are routinely dissected. Courts commonly list different elements of general damages, including mental anguish and physical pain and suffering, both past *775 and future, separately. In addition, general damages for permanent scarring and/or disfigurement are often listed separately. See, e.g., Joseph, 00-0628 at p. 17 (La.10/30/00), 772 So.2d at 106-107, n. 6; Degruise v. Houma Courier Newspaper Corp., 95-1862, p. 9 (La.11/25/96), 683 So.2d 689, 694. Thus, allowing a separate award for loss of enjoyment of life would not offend the existing concept of general damages and would reflect the accepted method of listing elements of general damages separately.
Moreover, loss of enjoyment of life is conceptually distinct from other components of general damages, including pain and suffering. Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish and emotional trauma that accompanies an injury. Loss of enjoyment of life, in comparison, refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury. In contrast to pain and suffering, whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury.
The First Circuit Court of Appeal, in Matos v. Clarendon Nat'l Ins. Co., 00-2814, p. 9 (La App. 1 Cir. 2/15/02), 808 So.2d 841, 848, described the difference between pain and suffering and loss of enjoyment of life as follows:
The same injuries may affect people differently. A quiet, reclusive person with a desk job may have pain and suffering from losing a leg. He would have a permanent disability but he would be able to continue work. He may have some loss of enjoyment of life but not to the extent that person who liked to hike, hunt or play tennis would. A person with a bad back and grown children, who does not do heavy lifting, may not lose as much enjoyment of life as someone with young children who cannot play "horse" or enjoy the squeals of a young child being tossed into the air. Life is much more than simple toil and sometimes the greatest pleasures come from the simplest things.
Consider, for example, two boys, one athletic and the other artistic, who are both involved in an accident and suffer similar injuries. Presumably, each boy should be awarded a similar quantum of damages for pain and suffering. However, the same injury may affect the boys very differently. The artist's lifestyle was not drastically altered by the accident, as he was able to resume his artistic activities after the accident, whereas the athlete's lifestyle is altered significantly, as he has to resign from his team and can no longer participate in athletics. Arguably, the athlete may be entitled to a greater pain and suffering award if he can demonstrate his mental anguish occasioned by the accident and its consequences. The athlete is damaged, however, well beyond his mental anguish over not being able to participate in athletics because now the athlete is forced to drastically alter his lifestyle as a result of his accident. The athlete is no longer able to participate in athletics, in competition or at practice, and has to find another avocation to fill his leisure time. Moreover, he no longer spends a significant amount of time with his teammates and is forced to seek out new friends. These detrimental changes in lifestyle go uncompensated in an award for pain and suffering. Under these circumstances, the drastic lifestyle change required of the athlete, as compared with the artist, warrants an additional award for the athlete's loss of enjoyment of life. To ignore the athlete's change in lifestyle and to award each boy *776 roughly the same quantum of damages because each experienced similar pain and suffering would fail to compensate the athlete for all of his damage.
Given the conceptual difference between pain and suffering and loss of enjoyment of life, a separate award for loss of enjoyment of life is warranted and is not duplicative of the award for pain and suffering, if the damages resulting from loss of enjoyment of life are sufficiently proven. When given the proper jury instructions, jurors can comprehend the difference between the pain and suffering of being in a hospital, undergoing treatment, etc. and the loss of enjoyment of life that occurs because the injured party can no longer participate in a vocation or avocation that the party enjoys.
A majority of the lower courts have supported this position by allowing separate awards for loss of enjoyment of life. The First, Second, Third, and Fifth Circuit Courts of Appeal have held that a separate award for loss of enjoyment of life is compensable when proven, while only the Fourth Circuit Court of Appeal has held that such an award is erroneous as a matter of law.
The Third Circuit Court of Appeal first recognized a separate award for loss of enjoyment of life in Andrews v. Mosley Well Serv., 514 So.2d 491, 498-99 (La.App. 3 Cir.1987), after the jury awarded the plaintiff $75,000 for loss of enjoyment of life. On appeal, the defendants contended that as a matter of law, loss of enjoyment of life had no separate identity as a compensable item of general damages and that therefore such an award was duplicative. The Third Circuit Court of Appeal rejected defendants' argument and upheld the award in part because it found that the district court fully explained what loss of enjoyment of life meant and how it differed from pain and suffering in its instructions.
Since Andrews, the Third Circuit Court of Appeal has reiterated its holding that loss of enjoyment of life can be a separate element of general damages. See Richard v. Teague, 92-17, p. (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1174; Knepper v. Robin, 99-95, pp. 13-15 (La.App. 3 Cir. 11/17/99), 745 So.2d 1248, 1256-1257; Basco v. Liberty Mut. Ins. Co., 05-0143, pp. 9-14 (La.App. 3 Cir. 8/17/05), 909 So.2d 660, 665-68.
In addition, the First Circuit Court of Appeal has consistently held that loss of enjoyment of life is a separate item of damages independent from pain and suffering. In re Medical Review Panel on Behalf of Laurent, 94,1661, p. 13 (La.App. 1 Cir. 6/23/95), 657 So.2d 713, 722 (upholding an award for loss of enjoyment of life as warranted by the evidence, "[c]onsidering the fact that `loss of enjoyment of life' can be a separate item of damages"); Lemaire v. CIBA-GEIGY Corp., 99-1809, pp. 20-21 (La.App. 1 Cir. 6/22/01), 793 So.2d 336, 352 (upholding a general damage award that included a separate award for loss of enjoyment of life, stating that "[t]his court has previously held that loss of enjoyment of life is a separate item of damages and independent from physical pain and suffering"); Matos v. Clarendon Nat'l Ins. Co., 00-2814, pp. 7-10 (La App. 1 Cir. 2/15/02), 808 So.2d 841, 847-848 (upholding an award for loss of enjoyment of life because the district court fully explained what loss of enjoyment of life meant and how it differed from pain and suffering and because the plaintiff was deprived of many of the enjoyments of life and stating that the First Circuit recognizes loss of enjoyment of life as a separate and independent item of damages); Levy v.Bayou Ind. Maint. Servs., Inc., 03-0037, pp. 18-19 (La.App. 1 Cir. 9/26/03), *777 855 So.2d 968, 980-81 (upholding the award for loss of enjoyment of life as being based in the record and "not[ing] that this court has consistently recognized an award for loss of enjoyment of life as a separate and independent item of damages").
Similarly, the Second Circuit Court of Appeal has upheld separate awards for loss of enjoyment of life. Varnell v. Louisiana Tech Univ., 30,260, pp. 9-10 (La. App. 2 Cir. 2/25/98), 709 So.2d 890, 896 (stating that "[t]aken as a whole, the record supports the District Court's award of damages for loss of enjoyment of life as a separate element from the rest of general damages"); Day v. Ouachita Parish Sch. Bd., 35,831, pp. 8-9 (La.App. 2 Cir. 8/8/02), 823 So.2d 1039, 1044 (upholding a separate award for loss of enjoyment of life based on the record and stating that "[a] plaintiff is entitled to recover damages for loss of enjoyment of life if he proves that his lifestyle was detrimentally altered or if he was forced to give up activities because of his injury"); Bruce v. State Farm Ins. Co., 03-37704, pp. 16-17 (La.App. 2 Cir. 10/29/03), 859 So.2d 296, 306 (upholding a separate award of damages for loss of enjoyment of life as being neither excessive nor duplicative and stating that loss of enjoyment of life is a compensable element of general damages).
The Fifth Circuit has likewise followed the other circuits in holding that loss of enjoyment of life is a separate element of compensable general damages. Stevenson v. Louisiana Patient's Comp. Fund, 97-709, p. 6 (La.App. 5 Cir. 4/9/98), 710 So.2d 1178, 1182 (recognizing "that loss of enjoyment of life is a separate element of compensable general damages which must be determined by the trial judge" and rejecting defendant's "contention that, as a matter of law, the option of `loss of capacity to enjoy life' should not have been provided to the jury"); Hebert v. Old Republic Ins. Co., 01-355, p. 19 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1128 (upholding the award for loss of enjoyment of life as being supported in the record and stating that "[t]he jurisprudence recognizes that loss of enjoyment of life is a separate element of compensable general damages"); Poche v. Allstate Ins. Co., 04-1058, pp. 12-13 (La. App. 5 Cir. 3/1/05), 900 So.2d 55, 62-63 (rejecting defendant's contention that loss of enjoyment of life should not have been listed on the jury verdict sheet as a separate element of damages and finding that the award for loss of enjoyment of life was not duplicative of the award for permanent physical impairment).
In contrast, the jurisprudential development from the Fourth Circuit Court of Appeal has diverged from that of the other circuits. The Fourth Circuit has declined to follow the other circuits and remains the only circuit in Louisiana to have declared a separate recovery for loss of enjoyment of life erroneous as a matter of law.
In one decision rendered by the Fourth Circuit, Bernard v. Royal Ins., Co., 586 So.2d 607, 619 (La. 4 Cir.1991), however, the court affirmed a separate award for loss of enjoyment of life.[1] Subsequently, *778 in the context of maritime law, the Fourth Circuit Court of Appeal held that compensation for loss of enjoyment of life was inherently duplicative of damages for physical and mental pain and suffering because the plaintiffs' loss of enjoyment of life constituted the basis of the mental and physical pain and suffering.[2]Koepp v. Sea-Land Serv., Inc., 93-2562, p. 16 (La. App. 4 Cir. 11/17/94), 645 So.2d 1269, 1278.
Then, in Smith v. Juneau, 95-0724, pp. 37-39 (La.App. 4 Cir. 4/9/97), 692 So.2d 1365, 1383-84, the Fourth Circuit distinguished its holding in Koepp partly on the basis that Koepp was decided under federal maritime law and instead adopted a case-by-case approach for determining whether an award for loss of enjoyment of life is duplicative. In Smith, the Fourth Circuit examined the record and determined that the district court did not instruct the jurors as to the differences in the various elements of damages listed on the jury verdict form. Id. Additionally, the court of appeal found that the record contained no evidence to substantiate a finding that loss of enjoyment of life comprised a separate element of damages from pain and suffering. Id.
Thereafter, in Mistich v. Volkswagen of Germany, Inc., 94-0226, p. 5 (La App. 4th Cir. 6/25/97), 698 So.2d 47, 51, the Fourth Circuit Court of Appeal declared a separate award for loss of enjoyment of life erroneous as a matter of law and further stated that the court "conclude[s] that there is no competent evidence in the record to support this award even if it were a legitimate award in the first place." Since Mistich, the Fourth Circuit has reiterated its holding that a separate award for loss of enjoyment of life was erroneous as a matter of law in Brown v. Southern Baptist Hosp., 96-1990, pp. 16-17 (La.App. 4 Cir. 3/11/98), 715 So.2d 423, 433-34, and again in Washington v. Aetna Life Ins. Co., 04-0135, pp. 23-25 (La.App. 4 Cir. 10/13/04), 886 So.2d 572, 586-87.
However, we reject the Fourth Circuit's conclusion that a separate award for loss of enjoyment of life is erroneous as a matter of law. Although we are mindful that there is a conflict among the state and federal courts nationwide on this issue,[3] we *779 agree with the courts, including the Louisiana First, Second, Third, and Fifth Circuit Courts of Appeal, that have held loss of enjoyment of life to be a separate compensable element of general damages. We conclude that loss of enjoyment of life constitutes damage that is compensable under La. C.C. art. 2315 and accordingly that the jury may be allowed to give a separate award for loss of enjoyment of life. Nevertheless, whether or not loss of enjoyment of life is recoverable depends on the particular facts of the case, and should be left to the district court's discretion on a case-by-case analysis.
Furthermore, although a separate award for loss of enjoyment of life may be recoverable by the primary tort victim for the loss of enjoyment of life sustained during the victim's lifetime, it is not recoverable by the primary tort victim's family members who are eligible to recover for loss of consortium, service and society under La. C.C. art. 2315(B). Loss of consortium is a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest or personality). Ferrell v. Fireman's Fund Ins. Co., 96-3028, p. 8 (La.7/1/97), 696 So.2d 569, 574. Thus, under La. C.C. art. 2315(B), family members of the primary tort victim have an action, loss of consortium, that will compensate them for their diminished relationship with the primary tort victim. A family member's detrimental alteration in lifestyle, i.e. loss of enjoyment of life, results from the diminished relationship with the primary tort victim and therefore is already compensated with an award for loss of consortium. Hence, a wife's claim that she is unable to engage in activities that she formerly enjoyed prior to her husband's injury, such as taking vacations, attending sporting events, or dancing, is compensated under loss of consortium and need not be compensated again under loss of enjoyment of life. Allowing family members to recover for both their loss of consortium and their loss of enjoyment of life would be duplicative and would not be authorized by La. C.C. art. 2315(B).
Turning to the instant case, we note that it arises in the context of wrongful death and survival actions. Because this issue is being resolved on a motion in limine and in advance of trial, it is unclear whether plaintiffs, the widow and children of James Edward McGee, are attempting to assert a claim for their own loss of enjoyment of life caused by James Edward McGee's illness under the wrongful death action or whether plaintiffs are attempting to assert James Edward McGee's claim for his own loss of enjoyment of life under the survival action. Thus, we must examine whether loss of enjoyment of life is recoverable in wrongful death and survival actions.
In determining whether plaintiffs may assert a claim for loss of enjoyment of life in either a survival or wrongful death context, we begin with the premise that although both actions arise from a common tort, survival and wrongful death *780 actions are separate and distinct. Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death. Id. The survival action permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. Id. It is in the nature of a succession right. Id. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. Id. In addition, a wrongful death claim is like a loss of consortium claim insofar as it clearly compensates the beneficiaries for their own injuries, separate and distinct from the primary victim's injuries. Landry v. Avondale Indus., Inc., 03-0719, p. 10 (La.12/3/03), 864 So.2d 117, 126.
Since we have determined that recovery is precluded for the loss of enjoyment of life suffered by the primary victim's family members as it is duplicative of their loss of consortium claim, we likewise conclude that recovery is precluded for the loss of enjoyment of life suffered by the primary victim's family members as it is duplicative of their wrongful death claim. Therefore, we find that plaintiffs are limited to asserting James Edward McGee's loss of enjoyment of life during his lifetime under the survival action, and are precluded from asserting their own loss of enjoyment of life caused by James Edward McGee's illness.
Accordingly, we conclude that the court of appeal erred in holding that loss of enjoyment of life is erroneous as a matter of law. Instead, we find that loss of enjoyment of life is a separate compensable element of general damages that the jury may award separately from pain and suffering. However, plaintiffs may only assert a claim for the loss of enjoyment of life sustained by James Edward McGee, the primary tort victim, during his lifetime.

DECREE
For all the above reasons, we find that loss of enjoyment of life may be recoverable as a separate element of general damages that may be included on a jury verdict form. Therefore, we reverse the court of appeal's ruling granting the motion in limine and reinstate the district court's ruling denying the motion in limine to preclude plaintiffs from asserting a claim for loss of enjoyment of life.
REVERSED.
VICTORY and WEIMER, JJ., dissent and assign reasons.
KNOLL, J., additionally concurs with reasons.
VICTORY, J., dissenting.
I respectfully dissent from the majority's opinion for the same reasons given by Justice, then Judge, Knoll when she gave her view of hedonic damages, while sitting on the Third Circuit in 1987:
. . . in my view the jury verdict form contained a duplicitous item, namely, "Loss of enjoyment of life, past and future" and awarded plaintiff $75,000. For physical pain and suffering, past and future, the jury awarded plaintiff $250,000, and for mental pain and suffering, past and future, the jury awarded $75,000. After making awards for physical and mental pain and suffering, the award for loss of enjoyment of life is duplicitous. Therefore, I respectfully dissent, finding the damage award excessive and duplicitous.
Andrews v. Mosley Well Service, 514 So.2d 491, 501-2 (La.App. 3 Cir.1987), (Knoll, J., *781 dissenting), writ denied, 515 So.2d 807 (La. 1987), superseded by statute on other grounds as stated in Steers v. International Paper Co., 540 So.2d 1236 (La.App. 3 Cir.1989).
Across the nation, the term "hedonic damages" did not make its debut until the 1980s, when economists began using the term to refer to certain aspects of an injured party's non-pecuniary losses. See Victor E. Schwartz and Cary Silverman, Hedonic Damages: The Rapidly Bubbling Cauldron, 69 Brooklyn Law Rev. 1037, 1040-1041 (2004). In Louisiana, courts had not traditionally recognized "loss of enjoyment of life" as a separate element of damages and, in fact, such "hedonic damages" were not treated as a separate element of damages by any Louisiana appellate court before 1987, when the Third Circuit, over the dissent of then Judge Knoll, opined that "loss of enjoyment of life" damages could be awarded separate and apart from a general damages award. See Andrews v. Mosley Well Service, supra; see also Hernandez v. Continental Casualty Insurance Company, 615 So.2d 484, 492 (La.App. 4 Cir.1993) (Plotkin, J., dissenting). Instead, the traditional Louisiana approach was to include such "hedonic damages" within the broader scope of a unified general damages award, which extends to such non-pecuniary issues as "pain and suffering" and "loss of gratification." Boswell v. Roy O. Martin Lumber Company, Inc., 363 So.2d 506 (La.1978) (affirming a general damages award which included damages for mental pain and anguish over the loss of timber on plaintiff's land). Notably, this traditional Louisiana approach continues to be followed by at least the Fourth Circuit Court of Appeal, which has consistently and explicitly rejected all efforts to separate "hedonic damages" from the more generalized concept of general damages.[1]
Moreover, a nationwide survey of cases shows that while state courts are split on this issue, the majority of state courts have held that hedonic damages are included in general damages such as pain and suffering, mental anguish, and physical impairment, and may not be considered as a separate element of general damages.[2]
*782 Louisiana's unified concept of general damages serves to balance the potentially competing public policies of making the victim whole under Louisiana Civil Code *783 art. 2315 et seq., along with avoiding the inequitable outcome of the injured party securing a "double recovery" for a single element of harm-a recovery that would be more in the nature of exemplary or punitive damages that are not allowed under Louisiana law unless expressly provided for by statute. Gagnard v. Baldridge, 612 So.2d 732 (La.1993). Allowing hedonic damages as a separate item upsets this delicate balance and gives rise to multiple recovery, as "loss of enjoyment of life" fits squarely within the traditional scope of general damages, usually mental pain and suffering, for purposes of Louisiana law. This view was expressed in a recent article wherein the author stated:
As an analytical matter, "pleasure" and "pain" are related words of opposite meaning. Awarding damages both for "lost pleasure" and "pain and suffering" appears entirely redundant. Furthermore, to the extent that hedonic damages compensate a victim for the lost ability to undertake a physical activity, those damages are already provided for as disability.
...
In sum, hedonic damages pose the risk of double counting for two major reasons. First, the standard is quite conceptually similar to both pain and suffering and disability, especially when one considers that pain and suffering may continue after its physical dimension passes, and that disability necessarily must continue into the future. But even if there is an analytical distinction, the problem of application remains. Given that hedonic damages, like pain and suffering, cannot be measured against a concrete economic baseline, there is no way for a jury to keep the categories distinct in their calculations.
Schwartz and Silverman, supra, 69 Brook. L.Rev. 1037, 1049-1050.
The inability to enjoy certain things that were once enjoyed is almost always part of mental pain and suffering, which is already routinely awarded by judges and juries as a separate item of general damages.[3] Just as there is no need to separate "pain" and "suffering" from each other, there is no need to distinguish a lost enjoyment of life that is already included within the definition of general damages. For example, the California Supreme Court explained:
in general, courts have not attempted to draw distinctions between the elements of `pain' on the one hand, and `suffering' on the other; [citation omitted] rather, the unitary concept of `pain and suffering' has served as a convenient label under which a plaintiff may recover not only for physical pain but for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror, or ordeal.
Capelouto v. Kaiser Foundation Hospitals, et al., (1972) 7 Cal.3d 889, 892-3, 103 Cal.Rptr. 856, 500 P.2d 880, citing Crisci v. Security Ins. Co. (1967), 66 Cal.2d 425, 423, 58 Cal.Rptr. 13, 426 P.2d 173; Werchick, Unmeasurable Damages and a Yardstick (1966) 17 Hastings L.J. 263.
Contrary to the majority's opinion, allowing a separate award for loss of enjoyment of life allows a plaintiff to recover more than once for the same damage and gives rise to an endless array of potential subcategories for these losses. As pointed *784 out by commentators in discussing Mississippi's law prior to tort reform:
. . . the state's supreme court considered hedonic damages appropriate to remedy the lost enjoyment of `going on a first date, reading, debating politics, the sense of taste, recreational activities, and family activities.'[Kansas City S. Ry. C. [v. Johnson], 798 So.2d 374, 381 (Miss.2001)]. Applying this reasoning, a person injured in a car accident might recoverin addition to separate awards for past and future pain and suffering and disabilityfor being `deprived of the simple enjoyments of a father with a young child" and the enjoyment of outdoor recreational activities.' [Matos v. Clarendon Nat'l Ins. Co., 00-2814 (La. App. 1st Cir.2/15/02). 808 So.2d 841); see also Fantozzi v. Sandusky Cement Prods. Co., 64 Ohio St.3d 601, 597 N.E.2d 474, 486 (1992) ("Such damages include loss of ability to play golf, dance, bowl, play musical instruments, engage in specific outdoor sports, along with other activities.")]
Schwartz and Silverman, supra at 1038. Likewise, according to the majority's rationale, in addition to adding a line for loss of enjoyment of life, perhaps the Court should add separate lines for the following: depression, sadness, moodiness, inability to attend a football game, inability to attend a baseball game, inability to go fishing, and so on ad infinitum. The result is nonsensical and substantially duplicative.
Further, when the Louisiana legislature has found a need for separate and distinct elements of compensation to victims, it has provided for such by statute. For instance, in 1991, the legislature enacted La. Civil Code art. 2315.6 to include recoverable bystander damages for those who happen upon the scene of an event causing injury to another person. Interpreting the strict limitations of La. Civil Code art. 2315.6, this Court stated:
The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.
Trahan v. McManus, et al., 97-1224 (La.3/2/99), 728 So.2d 1273 at 1279. Thus, the legislature decided to allow recovery of bystander damages, and created them as an element separate and apart from general damages. Similarly, in 1982, the Legislature amended La. Civil Code art. 2315 by Act 202 to add the second paragraph, which reads, in pertinent part: "[d]amages may include loss of consortium, services and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person." This amendment allows recovery for loss of consortium. Conversely, it is apparent that the Legislature sees no reason to create "loss of enjoyment of life" as a separate element of damages, as it is already covered by the categories of general damages routinely allowed.
I agree with the Fourth Circuit and the majority view of the other states' courts and find that allowing a separate award for hedonic damages is a duplication of what is already provided for in a general damages award, specifically mental pain and suffering, and sets a dangerous stage for double recovery of damages.
For all of the above reasons, I respectfully dissent.
WEIMER, J., dissenting.
There is no dispute that an injured party has a cause of action in tort to collect *785 damages for loss of enjoyment of life and for mental pain and suffering, past and future. The real issue before this court is whether a line on a jury verdict form designated for loss of enjoyment of life, when coupled with a separate line on the same verdict form designated for mental pain and suffering, results in the plaintiff obtaining a duplicative award.[1]
I respectfully dissent because I find that a damage award for mental pain and suffering can adequately compensate for hedonic[2] damages. The award for pain compensates an individual for no longer having a physical or mental condition that formerly was free of pain. The award for loss of enjoyment of life compensates an individual for the absence of a physical or mental activity that formerly was a part of his or her lifestyle. Thus, "pain" and "pleasure" are merely two sides of the same coin, making an award for pain the equivalent of an award for loss of pleasure. In the terms of a jury verdict that makes specific awards for pain and suffering and loss of enjoyment of life, the injured party is potentially compensated for the same deprivation twice.
When one suffers a loss of enjoyment of life, this loss refers to, in the words of the majority, "detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury." Slip op. at 5. However, "alteration" or "inability" is generally caused by physical pain and suffering accompanied by mental pain and suffering. If one's lifestyle is altered or one's ability to participate in activities is changed, there is a commensurate physical or mental anguish component. Any distinction between or separation of the two, although existing theoretically, is far too fine a distinction to observe practically. As such, to award compensation for both results in duplication.
I propose a very practical solution. Depending on the facts of the case, the jury verdict form should have a line for loss of enjoyment of life or a line for mental pain and suffering, but not both. In the alternative, the jury verdict form could include a single line for loss of enjoyment of life and mental pain and suffering, which would serve the purpose of allowing the jury to consider both components of general damages without having to draw a fine line distinguishing between the two. This *786 resolution would serve the goal of making the plaintiff whole and would avoid duplication.
Despite my faith in juries, a jury verdict form that itemizes both mental pain and suffering and loss of enjoyment of life in separate considerations forces a jury to slice too finely the distinction between the two. In theory, the jury is capable of making separate awards, but from a practical standpoint such is unrealistic. Juries are fully capable of adding to the mental anguish award if the injured party suffers a change of lifestyle. One who suffers a change in lifestyle need only convince the jury that this loss has increased his or her mental anguish.
The traditional categories for general damages have served us for decades,[3] despite the fact that the whole area of general damages is defined as damages which cannot be calculated with pecuniary exactitude. Thus, exactitude cannot be expected. To avoid duplication, the trial court should allow an itemization of mental pain and suffering or an itemization of loss of enjoyment of life, but not both, on the jury verdict form. Alternatively, the jury verdict form could include a single line for loss of enjoyment of life and mental pain and suffering.
KNOLL, Justice, additionally concurring.
Although I agree with the majority that loss of enjoyment of life may be recoverable as a separate element of general damages that may be included on a jury verdict form, I write separately to address my dissent in Andrews v. Mosley Well Service, 514 So.2d 491(La.App. 3 Cir.1987), writ denied, 515 So.2d 807 (La.1987). In my dissent, I opined that because there was no distinction between mental pain and suffering and the losses associated with enjoyment of life's activities, hedonic damages could not legally or equitably by awarded separately from mental pain and suffering damages.
However, I do not now believe this issue is so simplistic. Jurisprudence on hedonic damages was in its early stages when I authored my dissent, and although I recognize that writ denials do not make law, this Court did deny writs in that matter. The subsequent developments in our jurisprudence on this issue have convinced me that my dissent was not completely developed. Today I would be more cautious and rule on a case-by-case basis as with any damage award and let the courts judge this issue.
NOTES
[1] The court stated:

The size of the various general damages reflect the jury's reaction to the detailed, necessarily gruesome medical testimony which was not rebutted. It is an understatement to say that Ms. Bernard has suffered and will suffer the ultimate amount of pain. The course of her medical treatment caused, rather than relieved, pain and resulted in utter frustration and false hopes for improvement. There is no guideline to gauge compensation for general damages. This case far transcends one crushed leg. We are confronted with a formerly healthy, 24-year-old college graduate whose life has been destroyed and who will live as a physical and mental cripple, inside a pain-ridden body, for the rest of her 47.6 year life expectancy.
We affirm the jury's award of $4,000,000 for past and future pain and mental anguish, and $25,000 for loss of enjoyment of life.
[2] The Fourth Circuit explained:

The plaintiff is entitled to receive compensation for the physical effects which impair his ability to engage in life enjoying activities; plaintiff is also entitled to receive compensation for the mental effects which impair his ability to engage in life enjoying activities. Plaintiff is not entitled to receive compensation for physical and mental effects of the injury plus compensation for loss of enjoyment of life, for loss of enjoyment of life constitutes the basis for the physical and mental components.
[3] Courts across the country have taken varied approaches, and as many states' highest courts have yet to consider the issue of loss of enjoyment of life, the trend nationwide remains unclear. Nevertheless, states that have weighed in are sometimes either constrained or empowered to disallow or to allow a separate recovery for loss of enjoyment of life by their specific statutory scheme for tort, wrongful death, and survival actions. For instance, the Supreme Court of New Hampshire found that its wrongful death statute, allowing recovery for "the probable duration of his life but for his injury," authorized a separate award for decedent's loss of enjoyment of life, i.e. decedent's inability to carry on and enjoy life as if he would have lived. Marcotte v. Timberlane/Hampstead Sch. Dist., 143 N.H. 331, 733 A.2d 394, 399 (1999). Similarly, the Supreme Court of Connecticut has "long held that loss of life's enjoyments is compensable in personal injury and wrongful death cases," Mather v. Griffin Hosp., 207 Conn. 125, 540 A.2d 666, 678 (1988), while the Supreme Court of South Carolina has held that loss of enjoyment of life and pain and suffering are separately compensable elements of damage. Boan v. Blackwell, 343 S.C. 498, 541 S.E.2d 242, 244 (2001). In contrast, the Supreme Court of Nebraska has held that loss of enjoyment of life is not a separate category of damages but may be considered as an element of pain and suffering and/or disability. Anderson v. Nebraska Dep't of Soc. Serv., 248 Neb. 651, 538 N.W.2d 732, 739 (1995). The Supreme Court of Washington, however, has upheld a jury instruction regarding plaintiff's loss of opportunity to become a professional dancer only because the court found that it did not mislead the jury or foster a double recovery in that particular case. Kirk v. WSU, 109 Wash.2d 448, 746 P.2d 285, 293 (1987).
[1] See Washington v. Aetna Life Insurance Company, et al., 04-0135 (La.App. 4 Cir. 10/13/04) 886 So.2d 572, 587, writ denied, 04-2799 (La.3/11/05), 896 So.2d 63, reconsideration denied, 04-2799 (La.4/27/05), 901 So.2d 1047 (holding that an award for loss of enjoyment of life and disability and/or disfigurement was duplicative of an award for past physical and mental pain and suffering); Brown v. Southern Baptist Hospital, 96-1990, 96-1991 (La.App. 4 Cir. 3/11/98), 715 So.2d 423, on rehearing clarifying judgment (La.App. 4 Cir. 4/15/98), writ denied, 98-959(La.5/29/98), 720 So.2d 335, (explaining that an award for loss of enjoyment of life is included in the concept of general damages, and is duplicative of an award for past and future pain and suffering); Mistich v. Volkswagon of Germany, Inc., et al., 94-0226 (La. App. 4 Cir. 6/25/97) 698 So.2d 47, writ denied, 97-1858,(11/14/97),703 So.2d 623, (holding that hedonic damages are included in the concept of general damages, and do not constitute a separate claim or cause of action); Smith v. Juneau, 95-0724 (La.App. 4 Cir. 4/9/97), 692 So.2d 1365 (holding that a jury's award for permanent disability, scarring and permanent disfigurement, and past loss of enjoyment of life were duplicative of the pain and suffering awards and reducing the judgment accordingly); Koepp v. Sea-Land Service, Inc., 93-2562 (La.App. 4 Cir. 11/17/94), 645 So.2d 1269 (denying recovery of hedonic damages as a distinct category of damages, stating that it was only a factor of pain and suffering, and held that the award of loss of enjoyment of life damages by the trial court was duplicative).
[2] See Loth v. Truck-A-Way Corporation, et al., 60 Cal.App.4th 757, 763, 70 Cal.Rptr.2d 571 (1998), (holding that in California, a pain and suffering award may include compensation for the plaintiff's loss of enjoyment of life but it may not be calculated as a separate award; however a plaintiff's attorney is not restricted from arguing this element to a jury); Frito-Lay, Inc., v. Cloud, 569 N.E.2d 983, 989 (Ind. Ct.App.1991), (holding it "is error to instruct the jury on the loss of quality and enjoyment of life as an element of damages separate from other elements of damage, such as pain and suffering or permanency of injury"); Poyzer v. McGraw 360 N.W.2d 748 (Iowa 1985) (holding that loss of enjoyment of life is a factor to be considered as a part of future pain and suffering and that it would be plainly duplicative to allow a separate award for loss of enjoyment of life); Gregory v. Carey, 246 Kan. 504, 791 P.2d 1329 (1990) (finding that evidence regarding loss of enjoyment of life was admissible, but allowing the jury to consider it as a separate element of general damages was in error); Leonard v. Parrish, 420 N.W.2d 629 (Minn.App.1988) (holding that the trial court did not abuse its broad discretion in rejecting plaintiff's request for a specific instruction on loss of her enjoyment of life damages to her sense of smell and taste, instead submitting that loss as a general element of damages); Banks ex rel. Banks v. Sunrise Hospital, 120 Nev. 822, 102 P.3d 52 (2004) (acknowledging the differences in opinion among jurisdictions regarding hedonic damages, and agreeing with California and those jurisdictions permitting plaintiffs to seek compensation for hedonic loss as an element of the general award for pain and suffering, but not separately in order to reduce the possibility of confusion or duplication of awards by the jury); Nussbaum v. Gibstein, 73 N.Y.2d 912, 914, 539 N.Y.S.2d 289, 536 N.E.2d 618 (1989), and McDougald v. Garber, 73 N.Y.2d 246, 538 N.Y.S.2d 937, 536 N.E.2d 372 (1989) (each holding that "loss of enjoyment of life is not a separate element of damages deserving a distinct award but is, instead, only a factor to be considered by the jury in assessing damages for conscious pain and suffering"); First Trust Company of North Dakota v. Scheels Hardware & Sports Shop, Inc., 429 N.W.2d 5, 13-14 (N.D.1988) (holding that the trial court did not err in refusing the plaintiff's request to instruct on the loss of enjoyment of life as a separate element of damages as "[i]t would have been appropriate for the plaintiffs to have argued loss of enjoyment of life as a component of pain, discomfort, mental anguish, and impairment of health, mind, or person, all of which were set forth in the trial court's instructions as recoverable elements of damage in this case"); Willinger v. Mercy Catholic Medical Center of Southeastern Pennsylvania, Fitzgerald Mercy Division, et al., 482 Pa. 441, 447, 393 A.2d 1188 (1978) (stating "[e]ven where the victim survives a compensable injury, this Court has never held that loss of life's pleasures could be compensated other than as a component of pain and suffering. Indeed, the two types of loss are interrelated"); Corcoran v. McNeal, 400 Pa. 14, 23, 161 A.2d 367, 372-73 (Pa.1960) (holding that "[t]he loss of well-being is as much a loss as an amputation. The inability to enjoy what one has heretofore keenly appreciated as a pain which can be equated with the infliction of a positive hurt. The conscious loss of a benefit to which one is entitled hurts as much as a festering wound"); Judd v. Rowley's Cherry Hill Orchards, Inc., 611 P.2d 1216, 1221 (Utah 1980) (ruling that "[t]he pain and suffering for which damages are recoverable in a personal injury action include not only physical pain but also mental pain or anguish, that is, the mental reaction to that pain and to the possible consequences of the physical injury. Included in mental pain and suffering is the diminished enjoyment of life, as well as the humiliation and embarrassment resulting from permanent scars and disability"); Bulala, M.D. v. Boyd, et al., 239 Va. 218, 232, 389 S.E.2d 670 (1990), (holding that they have not recognized "loss of enjoyment of life" as a separately compensable element of damages in personal injury cases because the term is duplicative of other elements contained in the damage instruction); Wooldridge v. Woolett, 96 Wash.2d 659, 638 P.2d 566 (1981), (rejecting plaintiff's assertion that a qualitative loss of life's pleasures is a separate element of damages apart from pain and suffering, as well as declining to follow plaintiff's argument that such a recognition of qualitative loss of life's pleasures should give rise to a separate element of damages for a quantitative loss of those same pleasures); Wilt v. Buracker, 191 W.Va. 39, 443 S.E.2d 196 (1993), cert. denied, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), (holding that the loss of enjoyment of life resulting from permanent injury is part of the general measure of damages flowing from the permanent injury and is not subject to an economic calculation);
[3] Certainly, every reason one would not "enjoy life" would fall into one of the three categories of general damages already allowed-physical pain and suffering, mental pain and suffering, or disability.
[1] Although not directly before us, the issue may be moot depending upon what the legislature meant when, in 1996, it amended LSA-C.C.P. art. 1812. In particular, paragraph C provides that in a case for damages for injury, death, or loss, the court, at the request of any party, shall submit to the jury special written questions inquiring as to:

(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.
Whether the 1996 amendment to Article 1812 was intended to require a single award for general damages and a single award for special damages as opposed to itemization has not been resolved. See 1 FRANK L. MARAIST & HARRY T. LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE (1999), § 11.12 at 310, citing this court's earlier opinion in Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281, 1286 (La.1984), wherein this court held the requirement that the jury award a total dollar figure as then provided in Article 1812 did not necessarily preclude interrogatories about specific items of damages. Citing LSA-C.C.P. art. 1812(C)(4), the treatise says that "[a]rguably, the court may permit itemization of the total amount." (Emphasis supplied.) MARAIST & LEMMON, § 11.12 at 310 n. 18.
[2] The word "hedonic" originated in the mid 17th century, from the word "hedonikos," which derived from the earlier Greek word for "pleasure." THE NEW OXFORD AMERICAN DICTIONARY 788 (2001).
[3] In Louisiana, courts had not traditionally recognized loss of enjoyment of life as a separate element of damages until 1987, when the Court of Appeal, Third Circuit opined that such damages could be awarded separate and apart from a general damages award. Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3 Cir.), writ denied, 515 So.2d 807 (1987).